## APPEAL OF SECOR HOTEL CO.
## APPEAL OF DESHLER HOTEL CO.

Docket Nos. 5023–5025.   Promulgated May 28, 1927.

1. GOOD WILL, OBSOLESCENCE OF.—Good will is not property of the kind subject to a deduction for obsolescence under the provisions of section 234 (a) (7) of the Revenue Act of 1918.

2. VALUE OF LEASEHOLD.—The March 1, 1913, value of taxpayer's leasehold determined on the basis of capitalizing the difference between the rent reserved in the lease and the rent which the lessee would pay, making such a lease on March 1, 1913, over the remaining period of the lease.

*Rolland L. Nutt, Esq., Clarence W. Nutt, Esq.*, and *Elmer E. Davis, Esq.*, for the petitioners.
*John D. Foley, Esq.*, for the Commissioner.

In two separate letters dated April 22, 1925, the Commissioner served notices of deficiencies upon the Secor Hotel Co., of Toledo,

Ohio, in the amount of $588.99 for the year 1916, and $35,514.11 for the year 1919, and in another letter of the same date he served notice upon the Deshler Hotel Co. of Columbus, Ohio, of a deficiency in the amount of $29,925.57 for the year 1919. The same letters contained advice respecting overassessments for other years which are not here in controversy. The deficiencies against the Secor Hotel Co. and the Deshler Hotel Co. for the year 1919 are based on a consolidated return for that year. The Secor Hotel Co. filed two separate appeals docketed as Nos. 5023 and 5024, and the Deshler Hotel Co. filed a separate appeal docketed as No. 5025. By agreement of counsel, these three cases were tried together and will be so disposed of. The several petitions alleged a number of errors on the part of the Commissioner, but at the trial all of these were waived except two, as follows:

1. That the Commissioner disallowed a claimed deduction from gross income of the Secor Hotel Co. for the year 1919 based upon an alleged loss resulting from the enforcement of national prohibition, and the consequent discontinuance of the operation of the hotel bar, where intoxicating and other beverages and refreshments had been sold.

2. That the Commissioner refused to allow the Secor Hotel Co. to take a deduction from gross income based upon the alleged exhaustion of the March 1, 1913, value of the lease of the hotel property.

### FINDINGS OF FACT.

1. The Secor Hotel Co. is an Ohio corporation organized in 1908 and has since operated the Secor Hotel, located in Toledo.

2. The Deshler Hotel Co. is a corporation which operated the Deshler Hotel in Columbus for the years 1917, 1918, and 1919. It filed a return consolidated with that of the Secor Hotel Co. as an affiliated corporation.

3. In the fore part of the year 1908 the Commonwealth Building Co. was constructing a modern ten-story hotel building in Toledo. This building was financed in part by $450,000 of 5 per cent bonds sold to the citizens of the community. Desirous of obtaining a suitable tenant to operate the hotel it entered into negotiations with prominent hotel operators which negotiations finally culminated in a lease with L. C. Wallick and London I. Wallick of New York City. A lease was executed for a term of 20 years commencing August 1, 1908, and terminating July 31, 1928.

That portion of the lease provided for the payment of rent on an agreement that the land which was the subject of the lease had a value of $170,000, that the actual cost of the buildings and improve-

ments placed thereon by the lessor was to be estimated, and agreed to, and that the amount of annual rent paid was to be computed as 5 per cent on the first $450,000 of the total cost of land and buildings and 6 per cent on the balance of such costs for the first 5 years. For the second 5 years, the rent was to be 5 per cent on the first $450,000 of cost and 7½ per cent upon the remaining portions of such cost, and for the last 10 years, 5 per cent upon the first $450,000 cost and 8½ per cent upon the remaining portion of such cost. Thereafter, the amounts of rent under these provisions were computed as follows:

$46,500 for the first five years (Aug. 1, 1908, to July 31, 1913.)
$52,500 for the next five years (Aug. 1, 1913, to July 31, 1918.)
$56,500 for the last ten years (Aug. 1, 1918, to July 31, 1928.)

These payments are an average of $53,000 per year for the last 15 years of the term of the lease.

The lease provided that the lessee should pay taxes and assessments, and make such repairs as were necessary, and contained the other usual covenants.

The lease further provided that the lessee should maintain a first-class hotel, equal in all respects in accommodations, style, and management to the best hotels of its class and construction in cities of the United States of the approximate size of the City of Toledo.

The said lease was assigned and transferred on July 30, 1908, to the Secor Hotel Co., the taxpayer herein, which has operated said hotel under the lease ever since.

The valuation of this property for the purpose of local tax assessments was for the year 1913:

Land _____ $219,000
Building _____ 573,000

4. The taxpayer, the Secor Hotel Co., also operated in connection with the hotel a bar at which intoxicating liquors were sold. The bar was furnished with expensive fixtures and catered to a high-class trade. In addition to the guests of the hotel, many local business and professional men were in the habit of patronizing this bar. It became a public meeting place for many of the leading citizens of Toledo, and because of the quality of its service, and special brands of liquor it developed a profitable business. The taxpayer kept a record of the gross profits of the bar upon its books. To determine the net profit of the bar for income-tax purposes, the taxpayer deducted expenses directly attributable to the bar, including a portion of the overhead expenses of the hotel. Cost of the bar fixtures was not kept separately upon the books, as all the furniture of the hotel was purchased at one time, but the revenue agent valued the fixtures

at $18,000. The net profits as computed by the taxpayer for the years 1909 to 1913 were as follows:

| Year | Net profits |
|------|------------|
| 1909 | $20,779.70 |
| 1910 | 13,952.82 |
| 1911 | 13,993.88 |
| 1912 | 18,275.76 |
| 1913 (2 months) | 3,899.21 |
| Total | 70,901.37 |

Average profit per year $17,016.36.

The taxpayer computed the value of good will of the bar as follows:

| | |
|---|---|
| Investment in bar | $18,000.00 |
| Average inventory, Jan. 1, 1909, to March 1, 1913 | 6,058.15 |
| Total tangible investment | 24,058.15 |
| Fair earnings on above tangible investment at 8% | 1,924.65 |
| Average profit per year | 17,016.36 |
| Less fair earnings on tangible investment | 1,924.65 |
| Earnings on intangible investment (good will) | 15,091.71 |

5. At the end of the year 1918 it became evident that the sale of intoxicating liquor would be prohibited within the next year. National prohibition legislation required the taxpayer to cease its business of selling liquor July 1, 1919. The taxpayer's bar after said period lost the patronage of those that came for the purpose of obtaining their favorite beverages. The bar, together with its fixtures, was used for other purposes than the sale of liquor. The taxpayer alleges obsolescence of good will for 1919 in the sum of $100,611.40. The Commissioner refused to allow any value for obsolescence of good will of the said bar.

OPINION.

TRUSSELL: (1) The subject of a claim for loss on account of the obsolescence or destruction of the good will of a business which has been compulsorily terminated by reason of prohibition legislation was the subject of consideration of the Board in the case of the *Manhattan Brewing Co.*, 6 B. T. A. 952, and by the United States Circuit Court of Appeals in the case of *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626, where it was held that good will is not such a kind of property, a deduction for the obsolescence of which was provided for in section 234 (a) (7) of the Revenue Act of 1918. Those decisions are controlling in the instant case.

(2) The record contains a variety of opinion testimony respecting the March 1, 1913, value of the Secor Hotel Co.'s leasehold of land and buildings. One witness gave it as his opinion that on March 1, 1913, the land had a value of $228,000 and the building a value of $792,000. Another witness testified that the Toledo Real Estate Board Valuation Committee made an appraisal as of March 1, 1913, and found the land to have a value of $342,000 and the building a value of $896,000, and the same witness expressed the opinion that these values were the true values. These two and other witnesses also gave a variety of testimony respecting the value in use of hotel properties, estimating the same on the basis of a certain unit value per room per year, and as a result of all such testimony all of these witnesses testified to high values on this leasehold as of March 1, 1913.

One outstanding thought in all this testimony is that in 1908 the lessor and lessee agreed that the land subject to this lease had a value of $170,000 and that the rent finally agreed to on a percentage basis indicated a building cost of approximately $650,000. The witness whose testimony seems be the most convincing gave as his opinion that on March 1, 1913, the land value was $228,000 and the building value $792,000. On the basis of the agreed 1908 value, this taxpayer was able to procure a lease, during the last 15 years of which he must pay an average annual rental of $53,000. Upon the same basis, if he had been negotiating a lease in 1913 and upon a valuation of land of $228,000 and a building value of $792,000, and the same percentages as a basis for annual rent, this taxpayer would have been able to acquire a lease for the same 15 years at an average rental of $57,400. The difference between the average rental which the taxpayer will pay under the lease acquired and the average rent which he might have been required to pay had he negotiated the lease in 1913 is $4,400 per year, and we are of the opinion that this figure, on the basis of 15 annual payments represents the March 1, 1913, value of the leasehold, and such value is found by the use of ordinary interest tables to be about $26,000, and we therefore find that the March 1, 1913, value of the taxpayer's leasehold was $26,000, *Appeal of Northern Hotel Co.*, 3 B. T. A. 1099, and that in the readjustment of its income-tax returns for the years here under consideration it should be allowed a deduction from gross income equal to one-fifteenth of $26,000.

> *The deficiencies may be redetermined in accordance with the foregoing findings of fact and opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered accordingly.*